<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

FINBARR NOTTE,

                                  Plaintiff,

            v.

NEW SUSHI, LLC and THE MURAL & WALL
PRINTING COMPANY, LLC,

                                  Defendants.

Case No. 22cv6394 (EP) (JBC)

**OPINION**

**PADIN, District Judge.**

Before the Court is the narrow issue of damages owed by Defendant New Sushi, LLC ("Defendant" or "New Sushi") to Plaintiff Finbarr Notte ("Plaintiff" or "Notte").[1]  Following the Court's resolution of the liability portion of Plaintiff's motion for default judgment, D.E.s 17-18, the Court ordered supplemental briefing to determine damages, D.E. 24.  The Court has reviewed Plaintiff's supplemental brief, D.E. 31 ("Br."), and makes the following findings.

**I.      PLAINTIFF WILL BE AWARDED ACTUAL DAMAGES – COPYRIGHT ACT**

The Copyright Act allows a plaintiff to recover either statutory or actual damages, along with any profits attributable to the infringement that are not already considered in computing the actual damages.  17 U.S.C. § 504; *see also Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F.

---

[1] References to Defendant are exclusively to Defendant New Sushi, LLC, not Defendant The Mural & Wall Printing Company, LLC ("Mural & Wall").

Supp. 3d 339, 356 (S.D.N.Y. 2017). Plaintiff seeks $60,000 in actual damages.[2] Br. at 6. The Court will award Plaintiff $5,744[3] in actual damages.

For copyright claims, actual damages are determined by the copyrighted work's "fair market value."[4] *See Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1118 (3d Cir. 1986). "In appropriate circumstances, actual damages may be taken to be a reasonable license fee—that is, the fair market value of a license authorizing [a] defendant['s] use of the copyrighted work." *Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 409 (S.D.N.Y. 2004) (citing *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)); *see also 4DD Holdings, LLC v. United States*, 2023 WL 8290926, at *16 (Fed. Cir. Aug. 22, 2023) (same). Calculating actual damages based on a copyrighted work's fair market value is not an exact science, but "the amount of damages may not be based on 'undue speculation.'" *On Davis*, 246 F.3d at 166 (quoting *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir. 1985)); *see also 4DD Holdings, LLC*, 2023 WL 829026, at *16 (citation and internal quotation marks omitted) ("While we need not assess the license fee with mathematical exactness, we must be able to reasonably approximate it.[] Still, [s]ome difficulty in quantifying the damages attributable to the infringement should not

---

[2] Pursuant to the Copyright Act, statutory damages are unavailable for unregistered works, 17 U.S.C. § 412, as is the case here. However, as a foreign copyright holder, Plaintiff may seek actual damages, as "the Berne Convention does not require the owner of a foreign copyright to register in the United States before seeking redress for infringement of works originating in foreign nations . . . that are signatories to the convention." *Sadhu Singh Hamdad Trust. v. Ajit Newspaper Advert. Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007).

[3] This is the equivalent of £5,000. Because Plaintiff does not allege the date his mural was first infringed upon, the prevailing conversion rate on November 1, 2022, the date Plaintiff's Complaint was filed, will be used herein.

[4] Alternatively, where the infringement has produced lost sales or opportunities or diminished the copyright's value, actual damages can be calculated on this basis rather than on the calculation of hypothetical reasonable license fee. *See 4DD Holdings, LLC v. United States*, 2023 WL 8290926, at *15 (Fed. Cir. Aug. 22, 2023).

bar recovery."); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) (same).

In determining the fair market value of a reasonable license fee, the focus is on what a willing buyer and seller would have agreed upon ("hypothetical negotiation"), instead of how much a plaintiff would have charged to license the copyrighted work. *On Davis*, 246 F.3d at 166-67; *see also id.* at 169-70 (providing treatise example, which concludes negotiated license fee that parties would have agreed upon represents damages suffered by non-infringing party); *4DD Holdings, LLC*, 2023 WL 2890926, at *16 (first quoting *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014); and then quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995)) (underscoring that hypothetical negotiation between willing buyer and seller of license fee protects against sellers charging "what they would like to as if 'unconstrained by reality'" and buyers from "simply nam[ing] a price that they 'would prefer to pay"); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 539-40 (4th Cir. 2007) (finding actual damages for copyright infringement may be calculated based on reasonable license fee copyright holder would have received from willing buyer).

Here, Plaintiff seeks $60,000 in actual damages, claiming that this amount equals "the fair market value of [Defendant's] infringing use – the permanent installation of a commissioned work in a commercial venue, with a license for use in advertising and social media." Br. at 9. Plaintiff provides scant evidence to support a $60,000 award.

First, the two past licensing agreements that Plaintiff attaches do not support a $60,000 award. One agreement provides that Plaintiff's licensing fee for "the Digital Licensed Image[5]

---

[5] Plaintiff's attached agreements define "Digital Licensed Image" as "a high-resolution digitally-downloaded image provided by the Licensor."  D.E. 31-4, Ex. A. at 2, 7.

files" is "£9,000.00,"[6] but this agreement does not specify whether this fee accounts for one or more copyrighted works. *See* D.E. 31-4, Ex. A at 3-4 (omitting what work(s) is/are covered by licensing fee agreement). Thus, rendering the "£9,000.00" fee meaningless here. In contrast, the second agreement provides that Plaintiff's licensing fee is "£25,000"[7] for five copyrighted works. Therefore, this agreement supports a £5,000[8] licensing fee for one copyrighted work.[9]

Second, Plaintiff claims that "Defendant's failure to appear and defend itself in this action" makes $60,000 in actual damages "particularly reasonable[.]" Br. at 9. However, a defendant's failure to defend has no effect on the fair market value of a license authorizing the use of a plaintiff's copyrighted work. In fact, additional recovery on this basis, under the guise of actual damages, is not contemplated by 17 U.S.C. § 504. *Barrera*, 346 F. Supp. 2d at 411 (explaining "the need to engage in litigation" is not a basis for actual damages under Copyright Act). Therefore, this argument merits no credence.

Third, Plaintiff argues that $60,000 is consistent with other artists' commission fees for murals. Br. at 9. Plaintiff points to two cases for support: *Newton v. LePage*, 849 F. Supp. 2d 82 (D. Maine 2012), in which the fee for a mural was $60,000, and *Cort v. St. Paul Fire & Marine Ins. Cos., Inc.*, 311 F.3d 979 (9th Cir. 2002), in which the fee for a mural was $40,000. What Plaintiff omits is that those parties agreed on the fees, unlike Plaintiff's unilateral valuation here.

---

[6] This is the equivalent of $10,339.
[7] This is the equivalent of $28,720.
[8] This is the equivalent of $5,744.
[9] While Plaintiff asserts that he charges separate licensing fees for the commission of a work and the use of a work for commercial purposes (*i.e.*, social media posts), the attached agreements do not support this assertion. *See* D.E. 31-4, Ex. A. at 8 (agreement permitting both that "the Licen[s]ed Digital Images may be used for one-off production of architectural rendering and Work commissioned by the Licensee to be displayed at the business premise only as per prior email agreement between Licensor and Licensee" and "ancillary and incidental usage of the Digital Licensed Images by Licensee in connection with branding, marketing, advertisement and other promotional activities of the business").

*See Newton*, 849 F. Supp. 2d at 92; *Cort*, 311 F.3d at 982.  Therefore, these cases provide no support for the proposition that the cost of commissioning Plaintiff's mural would be commensurate with the fees agreed upon by the parties in those cases.

Based on the foregoing, the Court finds that an award of $5,744 in actual damages is an appropriate measure of the fair market value of Plaintiff's mural.

## II.   A PERMANENT INJUNCTION WILL BE ENTERED IN PLAINTIFF'S FAVOR – COPYRIGHT ACT

Pursuant to the Copyright Act, a district court may grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain" further infringement of a copyright.  17 U.S.C. § 502(a).  Plaintiff seeks a permanent injunction.  Br. at 6.  The Court will grant Plaintiff's request.

A permanent injunction may be granted if a plaintiff establishes four elements: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering that balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Plaintiff satisfies this burden.

First, the merits of Plaintiff's copyright claim have been established.  *See Notte v. New Sushi*, 2023 WL 4362730, at *1-4 (D.N.J. July 5, 2023) (granting default judgment against Defendant as to liability).  Second, Plaintiff will suffer irreparable harm if no permanent injunction is issued because, in such a scenario, Defendant may continue to deprive Plaintiff of his ability to control when and where his mural is displayed, as well as the licensing fee he would normally

charge for such a display.[10]  Third, the balance of hardships weighs in favor of Plaintiff, given that Defendant would suffer no hardship from being prevented from infringing on Plaintiff's mural. *See, e.g.*, *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015). Lastly, the public interest is served by preventing the unlawful reproduction of a copyrighted work.

Accordingly, the Court will permanently enjoin and restrain Defendant from using Plaintiff's mural in any manner.  *See Greetings Tour, Inc. v. NY & Co Ecomm LLC*, 2023 WL 8235948, at *3 (S.D.N.Y. Nov. 28, 2023) (granting permanent injunction against infringing defendant).

## III.    PLAINTIFF WILL BE AWARDED STATUTORY DAMAGES – DIGITAL MILLENIUM COPYRIGHT ACT

The Digital Millenium Copyright Act ("DMCA") allows a plaintiff to recover either statutory or actual damages, along with any profits attributable to the DMCA violation that are not already considered in computing the actual damages.  17 U.S.C. § 1203(c).  Statutory damages pursuant to the DMCA are awarded in the range of $2,500 to $25,000 for each violation of 17 U.S.C. § 1202.  17 U.S.C. § 1203(c)(3)(B); *see also Mango v. Buzzfeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020).  Plaintiff seeks $250,000 in statutory damages.  Br. at 11.  The Court will award Plaintiff $2,500 in statutory damages per violation.

Courts have interpreted the DMCA's "for each violation" directive to mean that a plaintiff may recover for "each violative act" under the DMCA.  *See, e.g.*, *McClatchey v. Associated Press*, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007).  For example, the intentional removal/alteration of copyright management information is considered one discrete violative act, while the wrongful distribution of that same work is its own discrete violative act.  *Reilly v. Commerce*, 2016 WL

---

[10] Plaintiff alleges that, to date, Defendant has not removed the infringing posts from its social media.  Br. at 12.

6837895, at *10-11 (S.D.N.Y. Oct. 31, 2016) (concluding alteration/removal of copyright management information constitutes violative act separate from distribution of work, which constitutes its own violative act). Moreover, each time the work is wrongfully distributed constitutes its own discrete violative act, *i.e.*, wrongfully distributing a work ten times amounts to ten violative acts. *McClatchey*, 2007 WL 1360261, at *6 ("Thus, [defendant] would violate the DMCA each time it wrongfully distributed a photograph to its subscribers.").

Here, Plaintiff claims that Defendant engaged in ten violative acts under the DMCA: one violation for Defendant's installation of the mural with the false copyright management information, and nine violations for Defendant's nine social media posts displaying the mural with false copyright management information.[11] Br. at 13. The Court concludes that an award for statutory damages for ten violative acts under the DMCA is appropriate. *See, e.g.*, *Granger v. One Call Lender Servs., LLC*, 2012 WL 3065271, at *5 (E.D. Pa. July 26, 2012) (finding defendants posted infringing product on internet on six separate occasions constituted six violative acts under DMCA for purposes of determining statutory damages).

Next, in determining the amount of statutory damages to award, courts "consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Agence France Press v. Morel*, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014). Plaintiff requests

---

[11] Courts have interpreted the removal of copyright management information and the addition of false copyright management information as two separate violative acts under the DMCA. *See Reilly*, 2016 WL 6837895, at *10-11. However, Plaintiff seeks statutory damages only for Defendant's installation of the mural with the false copyright management information, not its renewal. Br. at 13. Thus, statutory damages will not be awarded for the removal of the copyright management information.

$25,000 in statutory damages per violative act, totaling $250,000 for all ten violative acts.  Br. at 11.

Plaintiff's allegations, which are taken as true given Defendant's default, "suggest that Defendant acted willfully in removing Plaintiff's [copyright management information] from the [mural]."  *Myeress v. Elite Travel Grp. USA*, 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018). Additionally, as Plaintiff points out, calculating actual damages for each violative act of the DMCA is difficult, given Defendant's failure to participate in this case.  Br. at 12.  Lastly, Plaintiff asserts that Defendant's failure to remove the mural and social media posts displaying the mural demonstrates the need for deterrence.  *Id.*

However, beyond these points, Plaintiff provides no persuasive justification as to why each of Defendant's violative acts merit awarding $25,000 in statutory damages per violation.  "In fact, courts generally award statutory damages on the lower end of the damages spectrum."  *Wright v. Miah*, 2023 WL 6219435, at *13 (E.D.N.Y. Sept. 7, 2023) (citation omitted).  This is particularly true where there is no evidence of direct injury caused by a defendant's willful violation, like here, where Plaintiff provides no evidence that Defendant's violations of the DMCA injured him in a manner distinct from Defendant's violation of the Copyright Act.  *See, e.g.*, *Mantel v. Smash.com Inc.*, 2019 WL 5257571, at *4 (W.D.N.Y. Mar. 13, 2019) (awarding $5,000 in statutory damages for DMCA violation where there was "evidence of willfulness but also a lack of evidence of direct injury"); *see also Ward v. Compound Ent. LLC*, 2020 WL 4496763, at *3 (S.D.N.Y. Aug. 3, 2020) (finding plaintiff should be awarded only $2,500 under DMCA because plaintiff provided no evidence that photograph would have greater market value).

Accordingly, the Court finds that an award of $2,500 per violation will appropriately account for Defendant's willful conduct and will deter future violations.  *See Kennedy v. Creditgo,*

No. 15-cv-01790 (D.N.J. Feb. 8, 2016), D.E. 23 at 9-10 (finding statutory damages on lower end of range for DMCA violation "reasonable and just").

## IV.   PLAINTIFF WILL BE AWARDED ATTORNEY'S FEES AND COSTS – DIGITAL MILLENIUM COPYRIGHT ACT

The DMCA permits a district court, "in its discretion," to award reasonable attorney's fees and costs to the prevailing party in a civil action brought pursuant to 17 U.S.C. § 1202.[12]  17 U.S.C. § 1203(b)(4)-(5); *see also Sheldon v. Plot Com.*, 2016 WL 5107072, at *18 (E.D.N.Y. Aug. 26, 2016) (quoting *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006)) (explaining award of attorney's fees is "not automatic, but rather 'lies within the sole and rather broad discretion of the [reviewing c]ourt'").   Plaintiff seeks $55,605 in attorney's fees and $1,538.43 in costs. Br. at 14.  Given Defendant's willful conduct and default, the Court will award Plaintiff $5,840 in attorney's fees and $652 in costs.  *See Wright*, 2023 WL 621435, at *14 (awarding attorney's fees and costs given defendant's willful conduct and default in matter involving copyright and DMCA claims).

### A.  Plaintiff Will Be Awarded $5,840 in Attorney's Fees

Plaintiff seeks $55,605 in attorney's fees for one partner ("Gerber") and two third-year associates (respectively, "Murphy" and "Sorrentino").  To determine what constitutes reasonable attorney's fees, the Court must calculate a "lodestar," which represents the reasonable "number of hours expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Washington v. Phila. Cnty. Ct. of C.P.*, 89 F.3d 1031, 1035 (3d Cir. 1996) (same); *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, at *2 (E.D. Pa.

---

[12] The Copyright Act also permits an award of reasonable attorney's fees.  17 U.S.C. § 505. However, reasonable attorney's fees are unavailable for unregistered works, 17 U.S.C. § 412, as is the case here.

May 24, 2005) (same).  Courts typically look to the prevailing market rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" to determine a reasonable hourly rate.  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).  And then courts have an "'affirmative function' to 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude' those which were not reasonably expended."  *Shiffer Publ'g, Ltd.*, 2005 WL 1244923, at *8 (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

First, Plaintiff seeks an hourly rate of $500 for Gerber, claiming this rate is reasonable because he is a name partner at his firm with twenty years of experience in intellectual property litigation.  Br. at 16.  Plaintiff also seeks an hourly rate of $420 for Murphy and Sorrentino, claiming this rate is reasonable for third-year associates.  *Id.*  "A reasonable hourly rate is the rate a paying client would be willing to pay, bear[ing] in mind that a reasonable client wishes to spend the minimum necessary to litigate the case effectively."  *Olusola v. Don Coqui Holding Co., LLC*, 2021 WL 631031, at *7 (E.D.N.Y. Feb. 18, 2021) (internal quotation and citation omitted).

The Court finds Gerber's hourly rate reasonable, given his decades of experience in intellectual property litigation.  *See Myeress*, 2018 WL 5961424, at *5 (noting courts have approved rates of $500 for partners in copyright cases).  However, the Court finds that a $200 hourly rate for Murphy and Sorrentino is more reasonable than the requested $420, given that they are relatively junior associates and no representation as to their expertise in intellectual property law has been made.  *See BWP Media USA Inc. v. Uropa Media, Inc.*, 2014 WL 2011775, at *3 (S.D.N.Y. May 16, 2014) (finding $200 hourly rate appropriate for third-year associate who made "no representation that she had special expertise in copyright litigation"); *Reilly*, 2016 WL

6837895, at *13 (awarding $200 hourly rate for "relatively junior attorneys with no special expertise in copyright law").

Second, Plaintiff submits that counsel billed a combined total of 126.3 hours to this case. D.E. 31-5, Ex. B at 3-4.  Based on Plaintiff's records: Gerber billed 32.25 hours; Murphy billed 68.25 hours; and Sorrentino billed 25.8 hours.  *Id.*  However, upon a line-by-line review of Plaintiff's records, "[g]iven the nature of the case, the lack of opposition to [Plaintiff's default judgment] motion, and the number of hours expended by attorneys in similar cases, the Court finds it unreasonable to award [Plaintiff] attorney[']s fees for [126.3] hours of billable work." *Powerwand Inc. v. Nefai Neniang Trading Co.*, 2023 WL 4201748, at *7 (W.D. Wash. June 27, 2023); *see id.* (concluding 130 hours billed in DMCA case unreasonable for purposes of awarding attorney's fees, particularly where default judgment was entered against defendant).

With respect to the hours billed between January 16, 2023 and July 31, 2023 (24 total hours),[13] these hours do not concern Plaintiff's litigation of his claims against Defendant.  Instead, these hours concern discovery and settlement with respect to Mural & Wall.  *See* D.E. 31-5, Ex. B at 3-4 (*e.g.*, 1/16/2023 – "Discovery initiation documents/requests drafting – RFPs, RFAs, Interrogatories" – 1.5 hours – Murphy; 1/16/2023 – "Discovery initiation docs drafting – Initial" – 1.25 hours – Murphy; 1/16/2023 – "Discovery initial doc drafting – deposition notices to Mural & Wall" – .25 hour – Murphy; 1/18/2023 – "Review, revise discovery requests, disclosures; communications with opposing counsel; 26f" – 1 hour – Gerber; 1/24/2023-1/25/2023 – "drafting 26f report" – 2 hours and 1.25 hours – Murphy; 3/29/2023 – "Prep for Henao [(Mural & Wall principal)] deposition; draft outline; prep" – 3.5 hours – Gerber; 3/30/2023 – "Deposition of JD Henao [(Mural & Wall principal)]; review additional produced documents; communications with"

---

[13] 17.75 hours billed by Gerber and 6.25 hours billed by Murphy.

– 3.5 hours – Gerber; 6/15/2023 – "Court conference call re: status; communications with opposing counsel re: settlement" – 1 hour – Gerber; 6/29/2023 – "Draft Settlement Agreement; communications with opposing counsel re: same" – 1.25 hours – Gerber).  And while Plaintiff claims that it was at the March 2023 deposition of Mural & Wall's principal that Plaintiff learned that Defendant was aware of, but chose to intentionally ignore, this pending case, Br. at 20, this claim is meritless.  Defendant was fully aware of this case in November 2022 when service was duly executed on Defendant, D.E. 4, and Plaintiff's default judgment motion against Defendant was filed in January 2023, D.E. 18, almost three months before the deposition.  Accordingly, the Court will exclude these hours.

Additionally, certain tasks billed by Gerber, including filing the Complaint, coordinating service of process, drafting and filing affidavits of service, filing the motion for default judgment and supporting documents, and communicating with chambers about the motion for default judgment, could have been handled by an associate with less experience—at a lower hourly rate. *See Myeress*, 2018 WL 5961424, at *5 ("Certain tasks, such as process of service, serving the notice of the initial pretrial conference, and drafting and filing an affidavit of service, could have been handled by a less experienced attorney at a lower rate.").  Another issue with Gerber's billing is his inappropriate use of block billing for tasks; for example, Gerber billed 1.5 hours towards "[c]ommunications with MM re: default judgment motion, strategy; review draft default judgment motion docs, communications re: same; review, revise memo of law in support of default judgment."  D.E. 31-5 at 3; *see also Design Pics Inc. v. PBH Networks, Inc.*, 2021 WL 74088, at *1 (E.D.N.Y. Jan. 8, 2021) (reducing attorney's fees "to account for block billing, the duplication of effort, and the unreasonably high number of hours billed for a routine default").  Therefore, based on the tasks that could have been handled by a less experienced associate and the

12

inappropriate block billing used by Gerber, the Court will reduce the hours Gerber billed by 50%. *See Design Pics Inc.*, 2021 WL 74088, at *1 (reducing attorney's fees across the board to a total amount of $3,484).

Next, a review of Murphy's billed hours makes clear that an excessive number of hours were billed.  First, Murphy billed 5.5 total hours to "Researching + drafting motion for clerk's default" and "Drafting motion for default (clerk's entry) – New[.]"  D.E. 31-5, Ex. B at 3.  But requests for entry of default are "formulaic, even arguably clerical in nature," which begs the question: how could researching and drafting a routine half-page request take 5.5 hours?  *See HB Prods., Inc. v. Faizan*, 2022 WL 2529864, at *7 (D. Haw. June 7, 2022) (reducing billed hours for two requests for entry of default to 1.35 total hours).  Therefore, Murphy's billed hours concerning the request for entry of default will be reduced to .7 hours.

Second, Murphy billed 2.75 total hours to "Motion for alternative service research" and "alternative service research[.]"  D.E. 31-5, Ex. B at 3.  But there is no "motion" for alternative service on the docket.  Moreover, the Court is skeptical that a third-year associate would engage in several hours' worth of research into the issue of alternative service.  Thus, Murphy's billed hours concerning alternative service will be reduced to .5 hours.

Third, Murphy billed 49.25 total hours alone to researching, outlining, drafting, and editing the motion for default judgment and accompanying exhibits.  D.E. 31-5, Ex. B at 3.  However, given the routine nature of a motion for default judgment, the lack of opposition to the motion, the amount of time Gerber also spent on this motion and accompanying exhibits, and the number of hours expended by attorneys in similar cases, awarding attorney's fees for 49.25 hours dedicated solely to the motion for default judgment would be extremely unreasonable.  *See, e.g.*, *HB Prods., Inc.*, 2022 WL 2529864, at *7 (reducing cumulative hours billed by all counsel to 12.6, after noting

that "[m]otions for default judgment tend to follow a set formula"). Thus, Murphy's billed hours concerning the motion for default judgment will be reduced to 4 hours.[14] *See Myeress*, 2018 WL 5961424, at *5 (reducing cumulative hours billed after expressing skepticism over hours billed to default judgment in copyright matter).

Similarly, a review of Sorrentino's billed hours makes clear that an excessive number of hours were billed. Specifically, Sorrentino billed 23.25 total hours alone to researching, drafting, and editing a supplemental brief on damages. D.E. 31-5, Ex. B at 4 (*e.g.*, 10/17/2023 – "Draft motion for damages, research into motion for" – 5.1 hours – Sorrentino; 10/18/2023 – "Draft motion for damages" – 4 hours – Sorrentino; 10/19/2023 – "Research and draft motion for damages" – 7.15 hours – Sorrentino; 10/20/2023 – "Research on attorneys' fees, pre- and post-judgment interest, injunctive relief, draft sections" – 5 hours – Sorrentino; 10/23/2023 – "Edit motion for damages" – 5 hours – Sorrentino). Given the nature of the supplemental brief, insofar as it exclusively concerned the narrow issue of damages owed by a defaulting party, the Court finds that an unreasonable number of hours were expended on this task. Relatedly, the Court will exclude the 1.5 hours billed to "Read through pleadings and docket, called chambers to request adjournment of conference, outline motion for damages," D.E. 31-, Ex. B at 4, for block billing that was also at least partially dedicated to the supplemental brief.[15] Thus, Sorrentino's billed hours, which truly only concern the supplemental brief on damages, will be reduced to 5 hours.

---

[14] The fact that Gerber also billed several hours to drafting and editing the motion for default judgment underscores the excessive billing that took place with respect to the motion for default judgment.

[15] Several of Murphy and Sorrentino's entries, like Gerber's, suffer from block billing. The Court cautions Plaintiff's counsel against using this practice in the future, particularly when seeking an award of attorney's fees.

Based on the foregoing, the hours expended by Plaintiff's counsel will be reduced to the following: (1) 5.8 hours for Gerber;[16] (2) 9.7 hours for Murphy;[17] and (3) 5 hours for Sorrentino.[18] Accordingly, based on the reasonable hourly rate for Gerber ($500), Murphy ($200), and Sorrentino ($200) multiplied by the reasonable hours expended by each of them, the Court will award Plaintiff $5,840 in attorney's fees.

### B. Plaintiff Will Be Awarded $652 in Costs

Plaintiff also seeks $1,538.43 in costs, but the Court finds that $652 is sufficient. Plaintiff's calculation of costs includes $402 in "Filing Fees," $250 for "New Sushi Service [of Process]," $18.20 in "PACER fees," $21.03 for "Mail and UPS Service [of Process] on Mural and Wall," and $847.20 for "TSG Deposition Fees, Hanao [(Mural and Wall's principal)] Deposition." D.E. 31-5, Ex. B at 2. The Court finds reasonable Plaintiff's submitted costs for filing fees and service on Defendant. But the two costs associated with Mural and Wall were not directly tied to Plaintiff's ability to prevail on his claims against Defendant; therefore, these costs will not be awarded to Plaintiff. Moreover, Plaintiff provides no basis for an award of PACER fees; thus, the Court declines to award this cost to Plaintiff. Instead, the Court limits Plaintiff's award to $652, which fully accounts for Plaintiff's costs in pursuing its claims against Defendant. *See* 17 U.S.C. § 1203(b)(4) (court "in its discretion may allow the recovery of costs"); *Mantel*, 2019 WL 5257571, at *5 (awarding plaintiff court filing fee and fee charged for service).

---

[16] Accounting for exclusion of hours billed to discovery and settlement with respect to Mural & Wall, as well as 60% reduction of hours billed for clerical tasks and block billing.

[17] Accounting for exclusion of hours billed to discovery and settlement with respect to Mural & Wall, as well as reduction of hours billed for alternative service research, entry of clerk's default, and motion for default judgment.

[18] Accounting for reduction of hours billed to supplemental brief on damages and block billing.

## V.      PLAINTIFF WILL BE AWARDED PREJUDGMENT INTEREST – COPYRIGHT ACT

Prejudgment interest is available in copyright cases at a court's discretion, exercised in light of fairness considerations. *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 397 (3d Cir. 2016) (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 145-46 (3d Cir. 2011)).  An award for prejudgment interest is favored, given that "[a]n award of actual damages under the Copyright Act alone 'does not mitigate harm caused by delay in making reparations—a harm the remedy of prejudgment interest is uniquely tailored to address.  Simply put, prejudgment interest is a different remedy for a different harm.'" *Id.* at 396 (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004)).  Plaintiff seeks an award for prejudgment interest consistent with the relevant U.S. prime rate, with an accrual date of June 10, 2022.[19]  Br. at 21.  In line with the Third Circuit's guidance, the Court will award Plaintiff prejudgment interest consistent with the U.S. prime rate for the relevant date range beginning on June 10, 2022.  *See In Re Frescati Shipping Co. Ltd.*, 886 F.3d 291, 314-15 (3d Cir. 2018); *see also Michael Grecco Prods. v. GlowImages, Inc.*, 2020 WL 1866172, at \*4 (D. Del. Apr. 6, 2020) (granting prejudgment interest consistent with U.S. prime rate in copyright infringement case).

## VI.     PLAINTIFF WILL BE AWARDED POST-JUDGMENT INTEREST

Lastly, Plaintiff requests, Br. at 22, and the Court will award Plaintiff, post-judgment interest in accordance with 28 U.S.C. § 1961.  *See Michael Grecco Prods.*, 2020 WL 1866172, at \*4.

---

[19] "June 10, 2022 is the date of [Defendant's] first social media post featuring the [mural] with false copyright management information."  Br. at 21 n.3.

16

## VII.    CONCLUSION

Based on the foregoing reasons, damages will be adjudged, and a permanent injunction will be entered against Defendant in accordance with the accompanying Order and Judgment.


Dated: February 20, 2024

_____

Evelyn Padin, U.S.D.J.